## Otto et al. v. Clark, Mayor, et al.

*Grover C. Ladner*, for plaintiffs.

*Abraham L. Freedman*, city solicitor, *Jerome J. Shestack*, first deputy city solicitor and *Richard H. Markowitz*, assistant city solicitor, for defendants.

LEWIS, P. J., and CARROLL, J., July 21, 1953.—The question for our decision in this case is whether the board of inspectors of the Philadelphia County Prison has become a city office by virtue of the City-County Consolidation Amendment of the Constitution, art. XIV, sec. 8, and is thereby subject to the provisions of the Philadelphia Home Rule Charter adopted on April 17, 1951.

In October 1952, plaintiffs, constituting the membership of the board of inspectors, filed a complaint in equity against the mayor and certain other officials to enjoin the enforcement of the charter provisions against them and their employes. Broadly speaking, the issues raised in the nine cases decided under the caption of Lennox v. Clark, 372 Pa. 355 (1953) are similar to the questions presented here, and the instant case was not disposed of with those cases because of the fact that this petition was filed at a later time.

After the Lennox case was determined counsel for the litigants agreed that this case should be decided on complaint and answer and that the injunction proceedings be discontinued. Accordingly, the city has filed a motion for judgment on the pleadings, the principal ground of which it that under the decision of the Supreme Court in the Lennox case plaintiffs are now city officers subject to the charter provisions. The parties having agreed that no issue of fact is in dispute, and that the sole questions involved are those presented by the complaint, answer, and motion for judgment, we shall decide the case on such pleadings.

The sweeping opinion of the Supreme Court in the Lennox case determines the effect of the City-County Consolidation Amendment, the Home Rule Act and the city charter on the personnel of former county offices in Philadelphia, and obviates the necessity for discussing points raised by plaintiffs that are controlled by that decision.

The Supreme Court there held (p. 366) that the constitutional amendment was self-executing in bringing the county offices within the framework of the city government, and that upon its adoption on November 4, 1951, the offices of the sheriff, county commissioner, clerk of quarter sessions, recorder of deeds, coroner, registration commission and board of revision of taxes became city offices "subject thereby to the laws then in effect governing and regulating city officers and employees, and also, of course, to any such laws as might thereafter become effective.": Lennox v. Clark, supra.

The court stated that although the functions and duties of these officers were to remain the same until changed by the legislature, nothing remained to be done to achieve the transition of the offices from county to municipal agencies, as the transition was then absolute. The effect of this change was held to be as follows (p. 370):

"As far, then, as what may be termed the inter city-county consolidation is concerned," the Chief Justice held, "it is a case of so far, so good. The one phase is completed in that the county offices are now a part of the municipal government and that all their officers and employees are now city officers and employes and as such bound by the provisions of the Charter concerning such officers and employes. But their activities or functions are not changed; they will operate just the same as before and continue to perform their present duties until the next stage of the project is entered upon, which is to accomplish what may be termed the intra city consolidation, that is, the reorganization or 'streamlining' of the municipal governmental structure, now enlarged by the acquisition of the former county offices."

The sum and substance of the Lennox case is that the offices enumerated above are now municipal offices, the

personnel of which are fully subject to the civil service system, the ban on political activity, the prohibition against appointment of private solicitors, the obligation to furnish information to designated offices and other charter provisions. This transition was wholly achieved by the constitutional amendment and neither legislation or any other action except the adoption of the charter by the citizens of Philadelphia was needed in order to place these offices within the city government. Thus, since this was achieved by a self-executing constitutional amendment there can be no addition to or derogation from this result by any method other than a subsequent constitutional amendment.

The court decided, however, that the offices of the prothonotary and register of wills, although designated as county offices in the Constitution, were not within the purview of the consolidation amendment and the charter. The ratio decidendi in the case of the two excepted offices was twofold: First, each office is the subject of a special and specific provision of the Constitution dealing with the judiciary, even though both are also included in the general provisions of the Constitution designating county offices.* Second, that each office is so closely integrated with the judicial branch of the government that it is not within the intendment of the constitutional amendment that they be subject to the charter.

Besides holding that all offices enumerated in article XIV of the Constitution, with the exception of the prothonotary and the register of wills, are within the provisions of the City-County Consolidation Amendment, the court also held that the board of revision of

---

* In Article V, which is the judiciary article of the Constitution, section 7 mentions the prothonotary and section 22, the register of wills. In addition, section 1 of article XIV mentions these two offices as well as all other offices which are county agencies and designates them as such.

taxes and the registration commission are county of- fices that became city agencies by virtue of the consolidation amendment, even though there is no reference to these offices in article XIV.

The court also held that the statutes requiring uniformity of voter registration as well as those controlling modes of assessment did not mean that these two agencies are State agencies, and rejected the authorities cited for the proposition that they are not county offices. The court further rejected argument by the board of revision of taxes that appointment of members of that board by the judges of the Common Pleas Courts of the First Judicial District differentiates them from the county offices enumerated in the Constitution, and also rejected the contention of the registration commission that gubernatorial appointment of its members is a factor to be considered.

The fact that the assessment of taxes and the registration of voters are not uniform throughout the State as to personnel and mode of selection, in contrast to the offices mentioned in article 1, sec. 14, of the Constitution, which are common to all counties, and that the functions and duties are primarily local duties, although a board from time to time has performed State-wide functions, led the court to the conclusion that these two agencies were also county offices that were transformed into city offices.

Thus, the test that is evolved from this decision in determining whether an office is a county office when it has not been specifically designated as such is to determine its duties, whether the mode of appointment of personnel is uniform throughout the State, and generally whether the services of the agency are tailored primarily to the needs of a particular county wherein it operates or whether it is Statewide in application.

The fact that an agency is not specifically designated in the Constitution as a county office does not militate

against the conclusion that it is such an agency; nor does the fact that its personnel is not elected but is appointed by the judges, concededly State officers; nor does a long legislative history of creation and implementation by successive acts of the legislature indicate that an agency is other than a county office.

As the court stated in the Lennox case (p. 376) :

"Certainly the mere fact that it was specifically established by an Act of the Legislature does not make it a State agency; all nonconstitutional offices are necessarily so created."

In light of this background our examination of the history, functions and duties of the board of inspectors leads us to the conclusion that this is a county agency that is within the intendment of the City-County Consolidation Amendment and is therefore subject to the charter provisions.

The Act of March 30, 1831, P. L. 228, was the first to authorize the erection of a county prison for Philadelphia; the act specifically designated the penal institution as one for the City and County of Philadelphia. It further provided that the county commissioners should select and purchase a suitable site in Philadelphia, title to which shall be "vested in the County of Philadelphia". Four years later by the Act of April 14, 1835, P. L. 232, the board of prison inspectors was created. This act provided that the prison was to be called "Philadelphia County Prison", and further provided that the board of inspectors was to be appointed by the mayor and the board of judges. Provisions for audit by county officials as well as appropriation by the county commissioners were included in this act. The Act of January 4, 1856, P. L. 711, reduced the membership of the board to nine and eliminated the mayor's power of appointment. This act provided that five of the members of the board were to be appointed by the judges of the court of quarter

sessions and four by the judges of the District Court of the County of Philadelphia and the board was given authority under section 4 of that act to adopt and enforce from time to time such rules and regulations as it shall deem proper for visiting prisons. Numerous other acts were passed, but the effect of these acts as well as the Consolidation Act of February 2, 1854, P. L. 21, did not essentially alter the power and authority of the prison inspectors conferred by the Act of 1835, the statute creating the agency.

The cases involving the board of inspectors deal principally with its power to fix the salaries of its employes. One of the leading cases defining the powers of this board is Graham v. Philadelphia, 288 Pa. 153 (1927), decided, of course, before the Act of May 2, 1945, P. L. 375, which authorized council to fix the salaries of all employes paid out of the city treasury. The effect of this latter statute was decided by this court (Carroll, J.) in Page v. City of Philadelphia, 67 D. & C. 620 (1949). In the Graham case the court held that the board had the power to fix the salaries of its employes without interference by council. The sole question in that case was whether the power belonged to the city *or* county, and the decision makes it quite clear that the functions of the board were county functions and the board performing them county officers. In rejecting the contention of the city in that case that the City Charter in 1919 brought the inspectors within the municipal framework the court held that nothing could be found in that charter to indicate that the function had been transferred from the county to the city. The conclusion in the Graham case, far from supporting plaintiff's position, reinforces the city's contention that the board is clearly a county office. We must note there was no amendment to the Constitution to be considered, and the one ques-

tion was whether the power belonged to city *or* to county officials.

It is therefore clear not only from the history of the Philadelphia board and from the organization of county prison management throughout the State, but also from applying the test established above to determine whether an office is a county or State agency, that these are county offices. Therefore the question is whether this is one of the county offices that became a city office by virtue of the consolidation amendment. As stated above in considering the cases of the board of revision of taxes and the registration commission and in view of the Lennox decision, we think that the legislative history of this agency is such as to bring it within the effect of the amendment as construed in the Lennox case.

Counsel has further contended, however, that even though the agency is a county agency the relationship of the board of inspectors to the court is parallel to that of the prothonotary and the register of wills. It might be noted that the original ground of the complaint did not make this allegation but generally followed the pattern of allegation of the other county offices involved in the Lennox suit, namely, that the agency was not a county office within the amendment and that further legislation was needed to effect the transition. Since this argument was rejected in the Lennox case the contention is now made that the principles governing the prothonotary and register of wills are applicable here.

It suffices to say that the primary reason for the differentiation of these two offices is the specific mention of both offices in the judiciary article of the Constitution. Not only is there no designation of the board of inspectors in that article but, like the board of revision of taxes and the registration commission, it

is wholly a creature of statute. Concededly the administration of prisons is a concern of the courts, but the board administering penal institutions can hardly be called an arm of the court. Indeed the duties of the sheriff and clerk of quarter sessions are more closely bound to the judiciary than those of the board of prison inspectors and yet these two offices were held to be subject to the amendment in the charter provisions.

When one notes the Rules of Civil Procedure of the Supreme Court provide for initiation of many types of proceedings solely through the sheriff—service of writs and complaints, as well as the comprehensive system of statutes and rules governing the sheriff's rôle in levying and execution—it is clear that the holding in the cases of the prothonotary and register of wills does not mean that every office whose function is tangential to the judicial orbit is an arm of the court that is exempt from the charter provisions. It was not just the inextricable intertwining with the judiciary that existed as to these two offices (which is not present here), but the specific mention of the offices in the very article of the Constitution establishing the judiciary that led the court to exempt them. Indeed, even though the clerk of the court of quarter sessions functions at the direction of the court, that office was, nevertheless, held to be within the purview of the charter because it was not provided for in article V of the Constitution.

One more point need be considered. The board submits that it is not subject to the charter because there is no specific mention of it in that document. What was said in the Lennox case (p. 362) we think is apt here:

"We said in the Carrow case that the solution of the legal problem there presented was entirely free from difficulty if the controlling enactments were read with an eye to their plain and unequivocal meaning instead

of with a straining after forced construction and a seeking of ambiguities. In large measure that same statement is applicable here."

Indeed, none of the former county offices is specifically mentioned as subject to all the provisions in the charter itself. The charter could not achieve this nor could it accomplish the abolition or alteration of these offices. What made these offices subject to the charter was not that document itself, but the City-County Consolidation Amendment of the Constitution.

Likewise there is no clause in the charter that specifically states that the sheriff, coroner, recorder of deeds, clerk of quarter sessions, board of revision of taxes, and registration commission are subject to all of its provisions, and yet these offices were held to be so governed. The delineation of the city's power in section 1-100 of the charter, the broad language of the provisions governing civil service, banning political activity and requiring information to be furnished to stated department heads, indicate that the charter's provisions are to apply to all who are within its authority by virtue of the constitutional amendment and the Home Rule Act. In addition, the intention to supervise penal institutions is specifically found in the comprehensive section dedicated to the department of welfare.

Construing the instrument as a whole, in light of the enabling acts, the constitutional amendment, and the principles enunciated in the Lennox case, leaves no doubt that the board of inspectors must comply with its provisions. Here again as in the Lennox case the only questions presented are those relating to personnel and not to the substantive duties or functions delineated in the statutes still in force that govern the conduct of the board.

In accord with the views herein expressed we hold that the board is a city office by virtue of the consoli-

dation amendment and is subject to the provisions of the Home Rule Charter. The complaint is dismissed, the temporary injunction initially granted is dissolved, and judgment on the pleadings is here entered for the City of Philadelphia, the costs to be paid by the City of Philadelphia.